We'll now move to the next case on the calendar. That is Gomez Diaz v. Barr. Let me make sure that counsel are present for the appellant. Is it Ms. Berdugo? Yes, Your Honor. Okay. And for the appellee, is Ms. Bird? Yes, Your Honor. All right. So, Ms. Berdugo, you have 10 minutes, but you've reserved two minutes for rebuttal. So, you'll get eight minutes now with a warning at the seven-minute mark that you're coming up to your eight-minute threshold. All right? Good morning, Your Honors, and may it please the Court. Manuel Berdugo with the law firm of Cleary Gottlieb on behalf of the petitioner, Mr. Luis Gomez Diaz. In this case, BIA committed multiple legal errors when it overturned the immigration judge's decision to grant Mr. Gomez Diaz cancellation of removal. In its 14-page comprehensive opinion, the IJ found that Mr. Gomez Diaz met all four eligibility requirements for cancellation of removal, including, as relevant here, that his U.S. citizen son, Jr., would suffer exceptional and extremely unusual hardship if his father were to be deported. Now, to establish such hardship, the IJ must, and here did, consider a number of As we've explained in our brief, in reviewing the IJ's decision, the BIA violated its own regulations and this Court's precedents by first reversing factual findings without explaining why they were clearly erroneous, by applying the wrong legal standard to the hardship determination, by making its own fact findings, and by mischaracterizing the record. These were errors of law that this Court undeniably has jurisdiction to review under 8 U.S.C. 1252 A.2.D., and upon that review, to vacate and remand the BIA's determination. Turning to the first issue, in reviewing the IJ's fact findings, that Mr. Gomez Diaz would make less than $5 a day in Honduras and that he would be unable to remit sufficient funds to support Jr.'s basic needs, the BIA failed to apply the clear error standard that its own regulations require it apply. Instead, the BIA stated that it is not clear from the evidence what jobs would be available and for what salary. The BIA's decision does not say that it is applying the clear error standard, and it plainly did not apply that standard. Instead, it was analyzing the evidence anew. It was not identifying precisely how the IJ erred in making its findings, and it did not provide a legally sufficient justification for why it rejected the IJ's findings. This Court has held in Wu Lin v. Lynch that failing to apply the clear error standard constitutes reversible error by the This is Jeff Sullivan. So in this case, the BIA didn't state the standard, which is regrettable, but it wasn't obvious to me that they didn't apply the standard. And what the BIA said was that diminished economic circumstances do not generally rise to the level of exceptional, extremely unusual hardship to a relative, and then seem to just disagree with the conclusion that the factual dispute? The factual dispute comes before that statement. That is where the BIA is not accepting the IJ's fact-finding that Mr. Gomez-Diaz would not be able to remit sufficient funds to support Junior's basic needs. And in doing that, what it's stating is saying there's no evidence indicating that the respondent has looked into finding work in Honduras, and that's simply not legally sufficient justification per this Court's precedent in Wu Lin. In Wu Lin, this Court stated that the BIA cannot simply reject a fact-finding without explaining why it's clearly erroneous, and that's what it's doing here. It also states, you know, it points to Mr. Gomez-Diaz's personal attributes. But again, the simple fact that these facts are in the record is not a reason that the does not point to any error made by the IJ. It doesn't explain how the IJ erred, and this Court has held in Wu Lin that that is necessary. If the BIA is going to overturn a fact-finding, it needs to explain why it's doing so. It needs to explain why the error is clearly erroneous, and that did not occur here. This is Judge Nardini. Following up on that same point, and I'm looking at page five of, I guess, it's your special appendix at the BIA's decision. I understand what you're saying about, you know, this argument about the facts, but doesn't the BIA say in any case, assuming that the respondent makes less money at present? In other words, they're saying regardless of what the facts, you know, even assuming that the IJ's facts are correct, it then says diminished economic circumstances would not generally rise to the level of exceptional and extremely unusual hardship. So, aren't they saying basically even if one does not dispute the fact found by the IJ, it does not meet the legal standard for exceptional and extremely unusual hardship, and would you not agree that's the sort of legal conclusion that the BIA would review de novo, and in fact, we, at the BIA, would review de novo? Was that not true? Your Honor, the assumption that the BIA makes that the respondent makes less money than at present is simply not the same as accepting the fact finding, which was very specific and was about how much money Mr. Gomez Diaz would be making, which was less than five dollars a day, and that that amount would not be able and not what its assumption is. Is it that Mr. Gomez Diaz is making less than five dollars a day like the IJ found? Is it 10? Is it 20? We don't really know because the BIA is not providing sufficient justification, which again, this court has held is necessary in order for the BIA to overturn a fact finding made by the IJ. And turning to the next area, Your Honor, the governing statute requires that the BIA consider whether removal would result in exceptional and extremely unusual hardship to the qualifying relative. This is a forward-looking inquiry, and the IJ must make an assessment of the future effect on the minor relative were the petitioner to be removed permanently. Now, in this case, the IJ focused on the correct inquiry and found that Mr. Gomez Diaz's would have a significant adverse effect on Junior's upbringing and that Junior is prone to developing a lasting psychological disorder given the increasing strain and emotional anxiety that was associated with the family situation. Excuse me, we have one more minute. This is Judge Park. Before you run out of time, could I ask you to address the fact finding that you argue the BIA did? And I think this is the focus here is on the finding about Junior's prior condition. Yes, Your Honor. I think the BIA said that there's no evidence that what he was suffering was mental versus physical. Could you address that? Yes, Your Honor. So, the IJ made no findings as to Junior's pre-existing condition. And when we say pre-existing condition, we mean prior to his father's detention. And that's because she didn't need to because the statute requires a forward-looking inquiry and it requires that the IJ determine what will happen to the qualifying relative in the future if he or she is separated from the petitioner. The IJ made no findings as to the pre-existing condition, but the BIA here at the bottom of the report simply does not state that. What the BIA is doing here and I would point this court to its precedent in Padmore v. Holder. What it's doing here is it's engaging in fact finding in the first instance in contravention of its own regulations. And it's doing so on a fact that it finds is extremely significant and important to its determination. So, in Padmore v. Holder, it stated that the BIA had decided to reverse the IJ not on the basis of having found clear error, but instead based on disputed material facts with respect to which the IJ reached no resolution. And it's analogous to what occurred in this case. The IJ made no resolution as to whether Junior had a pre-existing condition prior to the detention. The BIA here finds that Junior was functioning normally and that's in contravention of its own regulations. And as such, it finds that there is no hardship in this case. So, this court's precedent as articulated in Padmore v. Holder requires that this court remand the decision based on this fact. This is Judge Sullivan. I mean, the BIA repeatedly talked about the forward-looking psychosocial evaluation, right? Your Honor, it does discuss the evaluation, but it really only focuses on the parts of the report that discuss how Junior was acting when his father was around. And actually, not once in its decision does it really discuss the diagnosis of Junior's major depressive disorder or adjustment disorder with anxiety. It really only discusses that when it's recounting the IJ's findings. But in making its own determination, it solely focuses on the parts of the report that discuss Junior's condition prior to his father's detention. Well, that's because your client raised that on appeal, right? Your Honor, we did not raise that on appeal. What occurred is that the government raised it in their brief and they were the ones that appealed the decision. And in their brief, on page 22, they stated that there's no evidence that the depression and anxiety experienced by the respondent's son existed prior to the respondent's immigration proceedings. So, responding to that, we discussed the testimony and the evidence in the record that Junior did have a pre-existing condition, but regardless... Right, but you seem to be saying that because then the BIA sort of responded to that issue that now had been joined, that that was improper. Well, Your Honor, what was improper is the... It was the focus on that. So, whether or not prior to his detention, the focus is what will happen to Junior in the future if he is separated from his father. And the BIA simply does not analyze that. It does not analyze the future hardship. And there was a convincing report that really analyzed Junior at the most probative point when he had already been separated from his father for a few months. And instead of focusing on the socializing before his father was separated from him. Your Honor, if there's no more questions, I will yield my time for rebuttal. Okay. You reserved two minutes of rebuttal. We'll now hear from Ms. Bird on behalf of the appellee. Yes. Thanks very much, and good morning to the Court. I am Regina Bird, and I'm representing the respondent, the United States Attorney General. We'd first like to address the contention that the Board engaged in improper fact-finding. Respondent calls the Court's attention to 8 CFR Section 1003.1d. There, the regulation set forth the Board's authority over the immigration judge's decisions. That regulation makes clear that the Board does not have the no-vote review over an immigration judge's fact-finding. That is the part of the regulation that the Insist Council focused on. What Council fails to look at and to address is that in that very section of the regulation, at subparagraph double I, it goes on to state that the Board does, in fact, have the no-vote authority to review questions of law, discretion, and judgment, and all other issues and appeals from decisions of immigration judge. Here, because the exceptional and extremely unusual hardship determination is purely a discretionary determination, the Board properly exercised its right to review that question de novo. And so, consequently, all of the questions and arguments and contentions that petitioners raised regarding the Board's review of the immigration judge's decision are unfounded. The Board was in its right and exercised its jurisdiction properly to review the de novo determination, excuse me, to review the exceptional and extremely unusual hardship determination de novo. This is Judge Sullivan. It would have been helpful to just You've conceded that much. I'm sorry, would you say that again? Well, I mean, it seems to me that the part of the arguments of the appellants here is that the BIA didn't really state the standard that it was applying. And the government addressed that. The government addressed that in its brief. It stated that petitioners correctly noted that the Board did not address the standard. But we went on to recognize that there's no law requiring the Board to address and specifically state a standard. We noted that petitioners failed to cite the court to any law that requires it or regulation. And we went on to argue, as we do now, that in terms of the Board's immigration judge's findings, that the Board did, in fact, look at the findings in general under the clearly erroneous error standard. But when it comes down to the exceptional and extremely unusual hardship determination, the Board had its right to look at these, those findings for that particular determination under the de novo review requirement. And because this is Judge Park, could you? Sorry, this is Judge Park. Could you please address the BIA's fact-finding that Ms. Burdugo left off discussing? It sounded like this issue was raised before the BIA for the first time. And the argument I gather is that at that point, the BIA, instead of making the conclusion that, you know, that Junior was functioning normally before, that maybe it should have said even if, even assuming the report or maybe remanding to the IJ for further fact-finding instead of drawing its own conclusion. What's your response to that? The Board did not make its own fact-findings. The Board actually simply reweighed the findings rendered by the immigration judge. And it was within its rights to reweigh the discretionary determination. Because again, its authority to review the discretionary exceptional, extremely unusual hardship determination is de novo. So consequently, it did not have to agree with all that the immigration judge said. And it didn't. It simply reweighted and looked at the evidence that was presented and said the record doesn't support the immigration judge's that Mr. Diaz will not be able to find employment in Honduras that is going to pay him more than $5. And more importantly, the Board noted that the medical treatment that Mr. Diaz was concerned about being able to afford for his United States citizen son in his absence wasn't a question here. Because Mr. Diaz isn't paying for the medical treatment. I'm more focused on the son's condition and the BIA's finding that, you know, I think the statement was that there's no evidence that the suffering was mental versus physical. And that I don't know where the line is between reweighing and fact-finding. But that sounds like the Board was inferring something from the record that hadn't been stated by the IJ. The immigration judge dealt with the emotional and mental hardships of Mr. Diaz's son. What the Board did in looking at that determination, is it, again, under de novo authority, it looked at the record evidence and found that there was no evidence that the hardship, meaning the emotional and mental hardship that the son is presumed to suffer upon Mr. Diaz's removal, isn't any more different than that that suffered by, in any case, by a U.S. citizen son or daughter or mother on the removal of their loved one. Now, but that standard is set forth by Maddow Munrell. Munrell requires that the petitioner who seeks cancellation of removal has to show that the hardship complained of is going to be substantially beyond the ordinary hardships that would be expected when a close family member is removed. And so the Board didn't say that Mr. Diaz's son would not suffer emotional or mental hardship. It simply said, and it cites Maddow Munrell in support of it, that the child is not going to suffer from the evidence that was presented, hardship that meets the requirement of exceptional and extremely unusual hardship. This case is actually controlled by this Court's and De La Vega. There, this Court set forth the law of the circuit on its jurisdiction to review a petition from the Board's final order that denied cancellation of removal, which is the case before this Court. Pursuant to De La Vega, INA 242A2BI precludes review of Mr. Diaz's challenge to the denial of cancellation of removal because the decision here was based solely on the exceptional and extremely unusual hardship determination. And while Mr. Diaz focuses his argument on the fact-finding that it claims the Board engaged in, this Court holds that it looks beyond the rhetoric and focuses on the claims raised. Focusing on the claims that Mr. Diaz raised should indeed lead to determination that what he's actually doing is quarreling over the Board's refusal to exercise its discretion to grant cancellation of removal. This is Judge Nardini. How does the Supreme Court's recent decision in Guerrero affect the standard of review? Is Mendez or De La Vega undermined by Guerrero on the theory that now the application of the standard, what constitutes the hardship in question, based on the record, is now something that's subject to de novo review? Is that... Guerrero... Explain how Guerrero plays out with our prior case law. The government's position is that Guerrero did nothing to change the law of the circuit. In Sandoval, the Court made clear that it has jurisdiction... Excuse me. You have one more minute. Thank you. In Sandoval, which is rendered by this Court, it made clear that it does have jurisdiction over legal questions. Yeah, but my point being, didn't Guerrero expand our notion of what constitutes a legal question? The government doesn't believe that it did, because what Guerrero said is that the standard is undisputed or established facts being applied to the standard of review. So in other words, does the question raised challenge the standard of review based on undisputed or established facts? And the government, as we stated in our 28-J letter, that the facts on which Mr. Diaz bases his argument are facts that are not established. For instance, Mr. Diaz argues that the board rendered new fact findings when it didn't. The board did not find that Mr. Diaz's son did not have a mental or emotional condition. But doesn't that kind of put you in a pickle? Because you're either trying to argue against the petitioner here and say, no, no, no, look, the BIA, they didn't engage in any fact finding, right? That's another way of saying, look, we're just going to take the IJ's set of facts as a given, which kind of would put you into the world of Guerrero saying, no, look, there's pretty much an undisputed factual record. And our only issue here is how you apply the law to that. So it seems to me that when you're arguing against the claims that are raised by Mr. Gomez Diaz here, you're almost pushing yourself into a Guerrero situation, aren't you? The government doesn't believe in his argument against the facts that immigration just raised, nor have we alleged at all that the board did not accept those facts, except for what it did is to not give it the same weight. This court has recognized the fact that the board doesn't have to give the same weight to fact findings that the immigration judge made, especially when it comes down to discretionary determinations. And because exceptional, extremely unusual hardship is purely a discretionary determination, the board's decision or determination that the immigration judge's fact finding to grant that form of belief was supported in some regards by the record, it did not give full weight. And because it didn't overrule it, but simply exercise this right not to give that determination full weight, that it acted within its authority. And respondents would argue, and would urge the court to not reverse this case or to send it back because neither none of the court's prior precedents, nor does Guerrero change the outcome. All right. Thank you, Ms. Byrd. We'll now hear from Ms. Verdugo for two minutes of rebuttal. Thank you, Your Honors. I'd just like to make two points on rebuttal. The first is regarding the discretionary determination. So we do not contest that the ultimate determination of whether Mr. Gomez-Diaz met the hardship standard is discretionary. However, that simply does not give the BIA room to contravene its own regulations or make errors of law. And those errors of law are errors that this court has jurisdiction to review. The BIA still has to accept the fact findings, or if it believes that more fact finding is necessary, it must remand to the IJ for further fact findings. The second point I want to make is on the point about reweighing the evidence. The IJ made no fact findings as to Junior's preexisting condition prior to the detention. So the BIA was not reweighing facts that the IJ made because the IJ didn't make those fact findings. If the BIA really believed that it needed to know what Junior was experiencing prior to his father's detention, then it needed to remand to the IJ to make those fact findings, and that's not what it did here. Instead, it analyzed the evidence anew, which this court has held in Woolin v. Lynch and Padmore v. Holder that that is not acceptable, and it made its own finding that Junior was functioning normally prior to his father's incarceration. So because of the numerous errors of law that the BIA committed in its decision, we request that this court vacate and remand the BIA's determination. And if there are no more questions, I yield my time. All right. Thank you, Ms. Burdugo and Ms. Burd. We will reserve decision.